CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
January 06, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ADDICTION ALLIES, LLC,<br><br>　　　　　　　　　*Plaintiff,*<br><br>　v.<br><br>BERKSHIRE GROUP SERVICES, INC.,<br><br>　　　　　　　　　*Defendant.* | CASE NO. 3:22-cv-00036<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Addiction Allies, LLC's ("Addiction Allies") moves the Court for entry of default judgment against Defendant Berkshire Group Services, Inc. ("Berkshire"). For the reasons stated below, the Court **GRANTS** Addiction Allies' renewed motion for default judgment, **Dkt. 22**.

## I.　Background

### A.　Factual Background

The following facts are drawn from Addiction Allies' amended complaint, Dkt. 8, and are accepted as true for all purposes, excluding the determination of damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir.2001).

Addiction Allies is a comprehensive addiction and substance abuse treatment center headquartered in Charlottesville, Virginia, that "provid[es] treatment for individuals with substance disorders." Dkt. 8 at 2. Berkshire is a medical billing and practice management company located in North Adams, Massachusetts. Dkt. 8 at 2. On or about June, 12, 2018, the parties entered into a contact for services, in which Berkshire was to provide medical billing services to Addiction Allies' patients, hospitals, and insurance carriers. Dkt. 8 at 2-3. Berkshire

would receive 5.5% of all revenues it collected on behalf of Addiction Allies. Dkt. 8 at 3. Although the parties did not sign the contract, "they acted in accordance with its terms and conditions, including termination, at all relevant times," and Berkshire even later asserted that the fees it charged and the services it rendered were "as agreed to" under the contract. Dkt. 8 at 3. The existence or validity of the contract has not been contested at any stage of this litigation.

During the performance of the contract, Addiction Allies alleges that Berkshire "did not bill or pursue collection of all revenues that were due Addiction Allies" and did not disclose to this deficiency to Addiction Allies. Dkt. 8 at 3. More specifically, Addiction Allies alleges that Berkshire:

    (i)    Failed to "appeal a substantial number of insurance carrier coverage claim rejections denying insurance coverage for Addiction Allies patients;"

    (ii)    Failed to "provide Addiction Allies with any notices of requests for additional information from insurance carriers to resolve contested claims;"

    (iii)    Failed to "bill patient balances and did not send any statements to patients to collect payment for services rendered;" and

    (iv)    Failed to "provide Addiction Allies with patient payment statements or make adequate efforts to collect payment, and did not notify insurance carriers of any corrections in claims or re-submit rejected claims for an appeal process or administrative review."

Dkt. 8 at 3. Addiction Allies concludes that, based on these failures, Addiction Allies "lost payments that it would have been otherwise entitled to receive had [Berkshire] met its contractual obligations." Dkt. 8 at 4. Accordingly, in its amended complaint, Addiction Allies

argues that such failures support state law claims for (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing. Dkt. 8 at 4-5.

### B. Procedural History

Following its complaint, Addiction Allies filed proof showing service upon Berkshire's registered agent. Dkt. 12. Thereafter, Berkshire, by its registered agent—but not by counsel— filed a purported response, styled "Defendant's Response & Motions," which included a purported "Motion to Dismiss." Dkt. 13. This Court, noting that "[c]orporate entities including limited liability companies . . . can only appear in federal court through counsel," denied Berkshire's motion for its failure to be prepared and filed by counsel. Dkt. 14 at 1 (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993) (explaining that "[i]t has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel"). The Court directed Berkshire to "secure counsel to enter an appearance on its behalf, and answer or otherwise respond" to Addiction Allies' complaint within fourteen days. Dkt. 14 at 1. The Court further directed Addiction Allies to file a motion for entry of default, should Berkshire fail to respond. Dkt. 14 at 1.

After Berkshire failed to respond, Addiction Allies properly sought entry of default, and the Clerk of Court entered default as to Berkshire. Dkt. 16. One week later, Berkshire filed a "Pro Se Response" in which its registered agent notified the Court that it has been unable to secure representation in Virginia "[a]fter contacting no less than five Virginia law firms" and working through "no less than seven [] referrals." Dkt. 18 at 1. It further stated that Berkshire could not afford retainer "if representation were to occur" and that it had begun the process of dissolving the company. Dkt. 18 at 1.

On May 04, 2023, Addiction Allies moved for default judgment and, by affidavit, claimed $331,000 in damages—an amount which "constitut[ed] the revenues lost by [Addiction Allies] over a 15 month period" due to Berkshire's actions. Dkt. 19, 19-1 at 1. After reviewing Addiction Allies' motion, the Court directed Addiction Allies to show cause why it is entitled to $331,000.00 in damages. Dkt. 20 at 1. Specifically, the Court ordered Addiction Allies to "demonstrate how the that damages amount was derived from the supporting documents" and provide a "more detailed explanation of why the aforementioned damages are attributable to [Berkshire]." Dkt. 20 at 1.

Addiction Allies filed the instant, renewed motion for default judgment, seeking a reduced award of $324,339.00 plus interest. Dkt. 22. To support its damages claim, Addiction Allies has submitted an affidavit of Mr. Steven Shields, Plaintiff's expert witness. Dkt. 22-1.

II.   **Legal Standard**

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment "when a defendant fails to plead or otherwise defend in accordance with the Rules." *United States v. Morandi*, 673 F.2d 725, 727 (4th Cir. 1982) (quotations omitted). After the Clerk of Court's interlocutory "entry of default" provides notice to the defaulting party pursuant to Fed. R. Civ. P. 55(a), the non-defaulting party may move the court for "default judgment" under Fed. R. Civ. P. 55(b). "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has defaulted for not appearance and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). By failing to answer or otherwise respond, defendants admit the allegations in the complaint which are accepted as true, except for those relating to damages. *Id*. at 780. However, a court still must determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id*. Default judgment should be entered if the well-pleaded allegations in the complaint are sufficient to state a claim upon which relief can be granted. *Proctor v. Edmonds*, No. 7:18-cv-87, 2020 WL 4735348, at *2 (W.D. Va. Aug. 14, 2020). As to damages, Rule 55(b)(2) permits—but does not require—the court to conduct hearings to determine the amount of damages, or to investigate other matters. *See* Fed. R. Civ. P. 55(b)(2).

### III. Discussion

The Court has examined the pleadings, the service of process, and the record in this case. We find that Addiction Allies is entitled to default judgment against Berkshire because it has made a proper procedural showing for default judgment and has stated a legitimate cause of action for breach of contract and breach of the implied duty of good faith and fair dealing, warranting compensatory damages.

In reaching this determination, as explained below, the Court finds that (1) Massachusetts law is the appropriate choice of law to govern this dispute; (2) under Massachusetts law, Addiction Allies has adequately stated claims for breach of contract and breach of implied duty of good faith; and (3) Addiction Allies has adequately demonstrated its entitlement to $324,339.00 in damages.

### A. Choice of Law

This case raises conflict of law questions since it is a contract dispute between parties from different states and the contract purports to select the law of Massachusetts.

As this is a diversity action, this Court must apply the choice of law principles of Virginia, the jurisdiction in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Under Virginia choice of law, the law of the place of performance governs questions concerning performance of a contract. *Equitable Trust Co. v. Bratwursthaus Management Corp.*, 514 F.2d 565 (4th Cir. 1975). A contract breach is a performance issue and thus, is regulated by the law of the place of performance. *See Arkla Lumber & Mfg. Co. v. West Virginia Timber Co.*, 146 Va. 641, 132 S.E. 840 (1926); Restatement of Conflicts § 370 (1934); 16 Am. Jur. 2D, Conflict of Laws § 96 (1979).

Moreover, under Virginia conflict of law principles, "where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, [the courts] will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction." *Paul Business Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 343 (1990).

Here, both the law of the place of performance and the parties' selected jurisdiction point to the laws of the Commonwealth of Massachusetts. Berkshire is a Massachusetts corporation, and, without additional or contrary information, the Court reasons that when a Massachusetts corporation performs services pursuant to a services contract, the contract is performed in the state of Massachusetts—even when performed in connection with entities located in other states. Thus, under Virginia's adherence to the law of the place of performance, the law of Massachusetts should supply the substantive standards to govern this contractual dispute. Furthermore, the contract between the parties clearly selects the laws of Massachusetts: "This

agreement is governed and construed in accordance with the laws of the Commonwealth of Massachusetts where [Berkshire] is incorporated and maintains its sole office." Dkt. 13 at 10.[1,2] This further persuades the Court that the contract law of Massachusetts supplies the substantive standards in this dispute.

### B. Massachusetts Law of Contracts

Massachusetts law requires that a plaintiff establish four elements to prove a breach of contract: (1) the existence of a valid and binding contract; (2) the plaintiff's willingness to perform or performance; (3) a breach by the defendant of the terms of the contract; and (4) causation and the amount of damages to the plaintiff. *See, e.g., Amicas, Inc. v. GMG Health Sys., Ltd.*, 676 F.3d 227, 231 (1st Cir. 2012); *Singarella v. Boston*, 342 Mass. 385, 387 (1961).

Furthermore, "[t]he covenant of good faith and fair dealing is implied in every contract." *UNO Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 805 N.E.2d 957, 964 (2004). The covenant provides that "neither party shall do anything that will have the effect of

---

[1]     This choice of law clause in the contract, along with the contract itself, is only before the Court in full via Berkshire's purported motion to dismiss, *see* Dkt. 13, which was dismissed because it was not submitted by counsel. *See* Dkt. 14. However, Addiction Allies also submitted a portion of the contractual language as excerpted in an email, for purposes of demonstrating breach. *See* Dkt. 22-2 at 1-2. Here, the Court takes notice of the contractual language solely for purposes of determining the choice of law in this matter.

[2]     The Court also notes that the contract contains a forum selection clause which states that "any and all legal actions must be filed" in the Commonwealth of Massachusetts. Dkt. 13 at 10. However, the Court concludes that the clause should not be enforced. Forum selection clauses are generally enforced by federal courts, *see M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 13 (1972), as well as in Virginia, *see Paul Business Systems v. Canon U.S.A., Inc.*, 240 Va. 337 (Va.1990). The appropriate way to enforce a forum-selection clause pointing to a state forum is through the doctrine of forum non conveniens. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Under the common law doctrine of forum non conveniens, a "district court . . . may dispose of an action . . . when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Here, the doctrine of forum non conveniens does not warrant enforcement of the clause and/or dismissal of the action. First, no party has properly sought dismissal of the action under forum non conveniens. Second, the Court sees no need to dismiss the action *sua sponte*, because doing so would not serve judicial economy or convenience. Berkshire has notified the Court that it "lacks any assets and that it carries significant liabilities," such that it has begun "the process of dissolution." Dkt. 18 (Pro Se Letter to Court). It would be nonsensical and inefficient to force Addiction Allies to re-initiate this litigation in Massachusetts, only to confront a non-responsive and/or insolvent defendant. In the interest of convenience and judicial economy, the case should be heard and resolved in this jurisdiction, so that Addiction Allies may proceed to enforce any judgment awarded to it.

destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471–472, (1991) (quotations omitted). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *UNO Restaurants*, 441 Mass. at 385. "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain." *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005).

Here, Addiction Allies has adequately pled facts to state a legitimate cause of action for breach of contract and breach of the covenant of good faith and fair dealing under Massachusetts law. Addiction Allies alleges that although the parties did not sign a contract, they drew one up and subsequently "acted in accordance with its terms and conditions, including termination, at all relevant times"—to the extent that Berkshire even later asserted that the fees it charged and the services it rendered were "as agreed to" under the contract. Dkt. 8 at 3. Accepting these allegations as true, *see Ryan,* 253 F.3d 778, 780-81, the Court finds that a contract existed and that Addiction Allies was ready to perform.

Furthermore, Berkshire then breached the terms of the contract and violated the covenant of good faith and fair dealing. Addiction Allies alleges that Berkshire "did not bill or pursue collection of all revenues that were due Addiction Allies" and did not disclose to this deficiency to Addiction Allies. Dkt. 8 at 3. More specifically, Berkshire allegedly failed to "appeal a substantial number of insurance carrier coverage claim rejections;" failed to "provide Addiction Allies with any notices of requests for additional information from insurance carriers to resolve contested claims;" and failed to "bill patient balances . . . collect payment for services rendered." Dkt. 8 at 3. The Court finds these allegations sufficient to demonstrate that Berkshire breached

the contract during performance to Addiction Allies' detriment, and that Berkshire's actions had the effect of "destroying or injuring the rights of [Addiction Allies] to receive the fruits of the contract." *Anthony's Pier Four*, 411 Mass. 451, 471–472.

Accordingly, the Court concludes that Addiction Allies is entitled to default judgment against Berkshire based on breach of contract and breach of the covenant of good faith. The only remaining issue is the computation of damages.

### C. Damages

Addiction Allies claims $324,339.00 in lost revenue damages resulting from Berkshire's breach. To support its claim, Addiction Allies has submitted an affidavit of Mr. Steven Shields, Plaintiff's expert witness. *See* Dkt. 22-1. As explained below, the Court finds that Addiction Allies has submitted sufficient evidence of its damages such that it should be awarded $324,339.00 in damages.

Mr. Shields' affidavit first describes best practices in the medical billing industry and explains how Berkshire fell short of these standards, resulting in lost revenue for Addiction Allies. Dkt. 22-1 at 2-3. The affidavit next computes Addiction Allies' damages by comparing the revenue Addiction Allies received under contract with Berkshire with the revenue it received under contract with a subsequent firm, Medical Billing Solutions, LLC (MBS). Dkt. 22-1 at 3-4. The affidavit demonstrates that Berkshire collected only 47.8% from Addiction Allies' submitted charges during the relevant billing period, while MBS collected 56.8% from submitted charges during the subsequent period—a rate of collection which Addiction Allies alleges is industry best practice. Had Berkshire collected revenue at the same percentage as MBS, roughly 57% instead of 48%, Addiction Allies would have earned **$324,339.00 more in revenue** during the relevant period. The Court has reproduced the computation below.

|  | Berkshire | MBS |
|---|---|---|
| Billing Period | 01/01/2020 - 04/07/2021 | 01/01/2022 - 12/31/2022 |
| Charges Submitted by Billing Firm | $ 3,619,746.09 | $ 6,177,521.38 |
| Actual Payments to Addiction Allies | $ 1,731,314.09 | $ 3,508,336.52 |
| Revenue Collection % | 47.8% | 56.8% |
|  |  |  |
| Hypothetical Payments to Addiction Allies using MBS Revenue Collection % | $ 2,055,725.37 |  |
| Addiction Allies' Lost Revenue | $ 324,339.00 |  |

Based on these arguments and figures in the pleadings, the Court concludes that Addiction Allies' evidence and computation is credible, that a hearing on the matter is not necessary, and that Addiction Allies is therefore entitled to $324,339.00 in damages, plus post-judgement interest at the legal rate in accordance with 28 U.S.C. § 1961.

### IV. Conclusion

For the foregoing reasons, Plaintiff Addiction Allies is entitled to default judgment against Defendant Berkshire for the contract claims alleged in the complaint, entitling Addiction Allies to $324,339.00 in damages plus post-judgment interest at the legal rate until the judgment is fully paid. An appropriate order will issue.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion Order to all counsel of record.

Entered this 6th day of January, 2025.

*[signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE